# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MATTHEM HOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:16-cv-00814 |
| ) | CHIEF JUDGE CRENSHAW |
| JOSEPH COX and GOVERNMENT OF ) | |
| FAIRVIEW, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Matthew Howell ("Howell") brought this action against the Government of Fairview, Tennessee ("Fairview") and Officer Joseph Cox ("Cox"), pursuant to 42 U.S.C. § 1983 and the First and Fourth Amendments to the U.S. Constitution, arising out of an arrest on July 25, 2012, and subsequent prosecution. (Doc. No. 1.) Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 30); Plaintiff's Response in Opposition (Doc. No. 37); Defendants' Reply (Doc. No. 40); Defendants' Statement of Undisputed Material Facts (Doc. No. 34); Plaintiff's Response to Defendants' Statement of Undisputed Material Facts and Additional Proposed Facts (Doc. No. 38); Defendants' Response to Plaintiff's Statement of Additional Proposed Facts (Doc. No. 41); and numerous exhibits. The Motion is ripe for decision. For the following reasons, the Defendants' motion will be **GRANTED.**

I. **UNDISPUTED FACTS**

On July 25, 2012, Fairview police officers were dispatched to a bar to respond to a report of a possible fight in progress. (Doc. No. 32-1 at 1-2.) Cox arrived and saw two men walking away from the bar. (Id. at 2.) He stopped them and asked whether they were engaged in a fight. (Id.) Howell had been drinking. (Doc. No. 31-1 at 25, 43, 87, 95-96, 101-02.) Howell confirmed to Cox

that he had been in a verbal altercation with someone at the bar. (Id. at 88, 96-97, 99; Doc. No. 32-1 at 2.) According to Cox, Howell was acting aggressively and using foul language.[1] (Doc. No. 32-1 at 2.)

Cox arrested Howell, transported him to the police station, gave him a citation for public intoxication, and released him to a sober ride. (Doc. Nos. 31-3; 31-1 at 131; 32-1 at 2.) Howell's preliminary hearing was scheduled for August 17, 2012, at which time Howell waived the hearing and was released on his own recognizance. (Doc. Nos. 32-1 at 2; 31-3.) On September 10, 2012, a grand jury indicted Howell on the charge of public intoxication. (Doc. No. 31-4.)

Howell's case was tried by a jury in the Williamson County Criminal Court on July 11, 2013. (Doc. No. 31-5.) However, during the proceedings, Howell was hospitalized and the judge declared a mistrial. (Id.) The court rescheduled the case for "review" on February 6, 2015. (Doc. No. 31-6.) Howell failed to appear. (Doc. Nos. 32-1 at 3; 31-7.) The court issued a Capias for Howell's arrest. (Doc. No. 31-7.)

On March 17, 2015, Cox was on patrol and spotted Howell. (Doc. No. 32-1 at 3.) Cox detained Howell until the Williamson County Sheriff's Office could arrive with the Capias, arrest Howell pursuant to it, and transport Howell to jail. (Id.) Howell remained in jail without bail for fourteen days, until April 1, 2015. (Id.; Doc. Nos. 31-1 at 151; 31-8.) During that intervening time, Howell filed an emergency motion to set bond, and it was denied. (Doc. No. 31-1 at 151.) On April 1, 2015, the Court set aside the Capias and reinstated Howell's release on his own recognizance. (Doc. No. 31-8.) According to Howell's declaration, the judge and court clerk acknowledged to

---

[1] This is the general contour of events leading up to Howell's arrest. Further specifics are not necessary for determination of the instant motion. The encounter was captured by Cox's dashcam recorder. (Doc. No. 44 (manually filed).)

Howell that they had not properly notified him of the court date he missed. (Doc. No. 39-5 at 1-2.)

The court retried the case to a jury on June 10, 2015. (Doc. No. 31-9.) Howell was acquitted.[2] (Id.)

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the

---

[2] Plaintiff has set forth a number of "Proposed Additional Facts" with no citations. Local Rule 56.01(c) requires any concise statement of additional facts to be supported by "specific citations to the record supporting the contention that [each] such fact is in dispute." For this reason alone, the Court may disregard these averments. But there is another reason: as is made clear in the analysis section of this memorandum, the additional facts are immaterial to the outcome-determinative questions before the Court.

3

parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

**III.   ANALYSIS**

Plaintiff brings two § 1983 causes of action against Fairview and Cox: one under the Fourth Amendment and one under the First Amendment. (Doc. No. 1.) The Defendants move for summary judgment on all claims. (Doc. No. 30.)

As a preliminary matter, the Court is satisfied that Defendants had sufficient notice that the Complaint, however inartfully worded, is brought against Cox in his individual and official capacities. See Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001) (stating that the failure to "explicitly state whether a defendant is sued in his or her 'individual capacity' [] is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice"); Shepherd v. Wellman, 313 F.3d 963, 968 (6th Cir. 2002) (stating that the court considers the nature of the plaintiff's claims, including requests for compensatory or punitive damages). Here, Howell brought claims and requested punitive damages, which are not available in official capacity suits or suits against municipalities. Furthermore, in response to the instant motion, Howell clarified the nature of his claims. See Moore, 272 F.3d at 772 ("We have also looked to later pleadings, such as a response to a motion for summary judgment, to determine whether proper notice had been given.") (citing Abdur-Rahman v. Mich. Dept. of Corr., 65 F.3d 489, 491 (6th Cir. 1995)). The Court will analyze Howell's claims accordingly.

    A.    <u>Section 1983 Fourth Amendment Malicious Prosecution Claim</u>

        (i)    <u>Claim Against Fairview</u>

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original).

A plaintiff raising a municipal liability claim under § 1983 must first demonstrate a constitutional violation. Kinkus v. Village of Yorkville, 289 F. App'x 86, 93 & n.7 (6th Cir. 2008) (noting that there can be no municipal liability absent an actual constitutional violation). The plaintiff must then show that the violation occurred because of a municipal policy or custom. Monell, 436 U.S. at 694. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. Burgess v. Fischer, 735 F.3d 462, 478 (citing Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005)).

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." Barnes v. Wright, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). As the Sixth Circuit set forth in Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010):

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

Id. (citations omitted).

Here, Howell cannot meet the first requirement for municipal liability – establishing a cognizable Fourth Amendment malicious prosecution claim. This is because Howell's claim fails

at step three, a "deprivation of liberty" apart from the initial seizure. There is no question that Howell was initially only given a citation for public intoxication and released with the requirement that he appear in court to defend the charge. This is insufficient. See Noonan v. City of Oakland, 683 F. App'x 455, 463 (6th Cir. 2017) (holding that "the initial arrest alone is an insufficient deprivation of liberty" and "[s]ervice with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation"); Parker v. Robertson, 34 F.Supp.3d 847, 850 (M.D. Tenn. 2014) (collecting cases and holding plaintiff did not demonstrate a deprivation of liberty because, after posting bond, government pursued charges until they were dismissed).³

Nor can Howell rely on his arrest by the Williamson County Sheriff's Office pursuant to a Capias issued by the Williamson County Criminal Court in February 2015, and subsequent fourteen-day incarceration, to establish a deprivation of liberty apart from the initial seizure. Howell seems to argue that it should be considered so because the incarceration on the Capias was "the perfectly natural result of Defendant's Cox's accusation." (Doc. No. 37 at 6.) In other words, Howell appears to contend that the citation is tied to everything that flows from it, no matter how it comes about. (See id. at 7 ("[The Capias] occurred for the very same charge that Defendant Cox originally initiated and continuously prosecuted.")). However, Howell concedes that "the reason why he spent time in jail was simply because the *court* revoked his bond" because Howell did not attend a status conference. (Id. (emphasis added).) Indeed, the Williamson County

---

³ Compare with Miller v. Maddox, 866 F.3d 386, 393 (6th Cir. 2017) (finding question of fact as to sufficiency of deprivation where individual was incarcerated for four hours, required to pay money to be accepted into a pre-trial program, could have been required to post a $3,000 bond, and was required to check in with case manager once a week until trial); Johnson v. Moseley, 790 F.3d 649, 654 (6th Cir. 2015) (conditions of pre-trial release can constitution sufficient deprivation of liberty). No such conditions were present here.

Criminal Court issued the Capias, the Williamson County Sheriff's Office arrested Howell pursuant to it, and the Williamson County Criminal Court then released Howell on his own recognizance when it next took up the matter. None of these events – which occurred two and a half years after the citation at issue was issued – were instigated by Fairview or Cox or arose from any of their actions. In short, the Defendants had nothing to do with Howell being incarcerated due to the Capias.[4]

Because Howell has not established a question of material fact as to whether a constitutional violation has occurred, the Court will grant summary judgment to Fairview on this claim.

    (ii)    <u>Individual Capacity Claim Against Cox</u>

Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil actions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Caudill v. Hollen</u>, 431 F.3d 900, 911 (6th Cir. 2005). In determining whether qualified immunity applies, courts employ a two-part test: (a) whether "the facts alleged show the [defendant's] conduct violated a constitutional right," <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), and (b) whether the constitutional right at issue has been "clearly established" under the law, <u>Cope v. Heltsley</u>, 128 F.3d 452, 458 (6th Cir. 1997). "The court may address these prongs in any order, and if the plaintiff cannot make both showings,

---

[4] Howell suggests that the Williamson County Criminal Court's actions in revoking his bond and issuing the Capias may have been "arguably illegal and violative of due process." (Doc. No. 37 at 7.) Because Howell has not introduced evidence to suggest that these actions were other than the Court's and the Court's alone, this is irrelevant to his claims against Fairview and Cox.

7

the officer is entitled to qualified immunity." Brown v. Lewis, 779 F.3d 401, 412 (6th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 235-36 (2009)).

As discussed above, Howell has not established a question of material fact as to whether there was a violation of Howell's Fourth Amendment right to be free from malicious prosecution. Cox is, therefore, entitled to qualified immunity. The Court will enter summary judgment in favor of Cox on this claim.

    (iii)    Official Capacity Claim Against Cox

A suit against a state or local government employee in his official capacity is no different than a suit against his employer. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 165 (1985); Cady v. Arenac Cnty., 574 F.3d 334, 342 (6th Cir. 2009). Having granted summary judgment to Fairview on Howell's § 1983 Fourth Amendment claim, the Court will grant summary judgment to Cox on the redundant claim against him in his official capacity. See Jackson v. Shelby Cnty. Gov't, No. 07–6356, 2008 WL 4915434, at *1 (6th Cir. Nov. 10, 2008) (affirming district court's grant of summary judgment to defendants on claims brought against a sheriff in his official capacity "because those claims mirror[ed] the claims against the County, and [we]re therefore redundant"); Scott v. Tipton Cnty., No. 10-2616, 2011 WL 2515976, at *3-4 (W.D. Tenn. June 22, 2011) (noting that "the general practice of district courts in this circuit" is to "dismiss official capacity claims where the local governmental entity is already a party," collecting cases, and dismissing the plaintiff's official capacity claims as redundant) (internal quotation marks and citations omitted).

    B.    Section 1983 First Amendment Retaliation Claims

Howell asserts § 1983 First Amendment retaliation claims against Fairview and Cox (in his individual and official capacities). Howell's claim is that his arrest and prosecution was

8

retaliatory for expressing himself. Defendants argue that these claims are time-barred. Howell contends that the law allows for a "continuing accrual of a statute of limitations where a pattern of tortious behavior has been ongoing." (Doc. No. 37 at 14.)

The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007); see also Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). Based on this rule, the Sixth Circuit has long made clear that the limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28–3–104(a). Porter v. Brown, 289 F. App'x 114, 116 (6th Cir. 2008) (citing Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Berndt v. Tennessee, 796 F.2d 879, 883 (6th Cir. 1986)).

Under federal law, the limitations period begins to run when the plaintiff knows or has reason to know of the injury that forms the basis of his action. Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984). "In determining when the cause of action accrues in a § 1983 case, we must look to what event should have alerted the typical lay person to protect his or her rights." Edison v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (quoting Dixon v. Anderson, 928 F.2d 212, 215 (6th Cir. 1991)). In the case of a First Amendment retaliation claim, this is "when the defendants initiate the prosecution" of the plaintiff. Rapp v. Putnam, 644 F. App'x 621, 625 (6th Cir. 2016). "At that point, [the] plaintiff [will have] engaged in protected activity (first element), defendants took an adverse action (second element) by initiating a prosecution of plaintiff purportedly motivated by plaintiff's protected conduct (third element) and without probable cause (fourth element)." Id.

Rapp is instructive. In that case, a parking ticket "launched nearly a decade of litigation" driven by a "gadfly" law student. Id. at 622. As relevant here, the student received a parking ticket in September 2008 and confronted the officer who issued it, resulting in a citation for disrupting the normal activity of a Michigan State University employee. Id. The university allowed the charge to go forward, allegedly to teach Rapp, who was a thorn in the side of parking officials, a lesson. Id. The case went to a jury, which found Rapp guilty. Id. Rapp appealed his conviction to the Michigan Supreme Court, arguing that the ordinance was facially overbroad in violation of the First Amendment. On July 27, 2012, the Michigan Supreme Court agreed with Rapp and held the ordinance unconstitutional. Id. On November 16, 2012, the state district court entered an order dismissing the conviction. Id. Nearly two years later, on November 11, 2014, Rapp filed a § 1983 suit alleging a First Amendment retaliation claim and a Fourth Amendment malicious prosecution claim. The Sixth Circuit held that Rapp's § 1983 First Amendment claim accrued in September 2008, when the citation was issued and prosecution initiated. Id. at 625. Because Michigan's governing statute of limitations was three years, Rapp's complaint filed in 2014 was untimely. Id.

Likewise, Howell's claim accrued on the day he was arrested and received a citation – here, July 25, 2012. Indeed, Howell admitted in testimony that he complained on that very day that he was being retaliated against for speech. (Doc. No. 31-1.) Cox told Howell that he was being arrested "for his mouth" and that he could "argue his First Amendment rights to the judge." (Id.; Doc. No. 44 (manually filed).) Howell's Complaint was filed on April 28, 2016, nearly four years later. Accordingly, his § 1983 First Amendment retaliation claims are time-barred.

Howell's argument to the contrary is unpersuasive. Howell suggests that the statute of limitations should run from the date the prosecution ended, as opposed to when it began, because

10

his prosecution was an "entire ongoing scheme" to punish him for his expression. (Doc. No. 37 at 14-15.) The only authority Howell cites for this proposition is McCune v. City of Grand Rapids, Mich., 842 F.2d 903, 905-06 (6th Cir. 1988). McCune, however, does not support Howell's position. In McCune, the Sixth Circuit rejected a plaintiff's argument that his wrongful arrest, incarceration, and prosecution constituted a "continuing tort" that stretched the statute of limitations of all claims. Id. at 906. Instead, the court held, that under § 1983 there are discrete wrongs (i.e., separate torts with separate elements) that do not postpone accrual of each other. Id.

The Court will therefore grant summary judgment to Fairview and Cox on these claims.

C. False Arrest Claim

From its reading of the Complaint, the Court notes that it does not believe Howell intended to also bring a § 1983 claim for false arrest. (Doc. No. 1.) Moreover, Howell does not appear to argue in favor of such a claim in his Response to the summary judgment motion. (Doc. No. 37, passim.) Regardless, for the sake of clarity, such a claim would be time-barred. As discussed, the statute of limitations for § 1983 actions in Tennessee is one year. Porter, 289 F. App'x at 116. A claim for false arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends. Fox v. DeSoto, 489 F.3d 227, 233 (6th Cir. 2007) (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)). Accordingly, Howell's false arrest claim (if any), commenced either on the date of his arrest or, at the latest, his August 12, 2012 preliminary hearing. Howell's Complaint was filed on April 28, 2106, and any false arrest claim would therefore be untimely.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 28) will be **GRANTED**. This case will be dismissed.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE